448 P.2d 346

**STATE of Utah, Plaintiff and Respondent,**

v.

**Cathryn E. PFANNENSTIEL, Defendant and Appellant.**

No. 11313.

Supreme Court of Utah.

Dec. 2, 1968.

William H. Bowman, Ogden, for defendant and appellant.

Phil L. Hansen, Atty. Gen., Gerald G. Gundry, C. Jeffry Paoletti, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a conviction for violating our worthless check statute, Title 76–20–11, Utah Code Annotated 1953,[1] as amended by Laws of Utah 1965, Ch. 161, Sec. 1 (Vol. 8, 1967 Pocket Supp., p. 53).[2] Affirmed.

. Appellant issued a check with insufficient funds to one who repaired her car. She does not deny that she issued the check for parts and services. She simply says that the 1965 amendment which added "or wages for labor performed" immunized her against a criminal offense for which she would have been responsible before 1965. This contention is bottomed on the Roman-

1. Abstracted: "Any person who for himself * * * willfully, with intent to defraud, makes or draws * * * any check * * * upon any bank * * * for the payment of money, or wages for labor performed, knowing at the time of such making * * * that the maker * * * has not sufficient funds in, or credit with said bank * * * for the payment of such checks * * * in full upon its presentation * * * is punishable by imprisonment."

2. Only difference: The 1965 amendment added "or wages for labor performed" after "payment of money."

tic axiom of "expressio unius est exclusio alterius," apparently employed by Coke upon Littleton. Under the circumstances we cannot buy the maxim as being apropos here.

Up to now money has been money. With the advent of amerbancards and computers, money may not be money any more,—but neither the statute nor the legislature to date has succumbed to the papier-maché fiction, or friction.

In practically every commercial transaction money is king. Under the bum-check statute, money is the gist. The statute offends against dishonest and promiscuous circulation of phony paper. The addition of the words, "or wages * * *," in 99 per cent of the cases connotes "money," and the average wage earner would not consider wages as being sweet potatoes or onions. In our opinion, in this particular case, had the legislature ever heard of "expressio unius" it would have defined the expression as "expressio unius est *inclusio* alterius" when it added "wages" to the statute. Some people may be confused with "expressio unius est exclusio alterius," but certainly not the legislature.

The statute clearly has to do with writing a check "for the payment of money." The check simply is an order *to the bank to pay money* to the service station man,—not to the service station man to pay money

to the fraudulent drawer of the check. The same is true of "wages,"—and it is inconceivable to us to interpret the statute, as amended, to mean that there is an infraction of that law only where the drawee cashes the check, but not where he takes it in exchange for goods or services sold. The possible novelty of such interpretation looms large in the case where one might visit Sears, Roebuck, sign and deliver a $20 check, receive $10 worth of merchandise and $10 change in money. In such event, we suppose that logic would dictate that such a person would be half-guilty and half-innocent, the sentence to be equated in like percentage.

We are unprepared to say the legislature, in adding "wages" to its sanctions meant to abolish the statute almost in its entirety. Although it is difficult to hold a seance over the individual or collective minds of legislators, it might be a wild but meritorious conjecture that the addition of the word "wages" just may have been a word of clarification,—not radical change in substantive law—engendered perhaps by the recent tendency of an employer to contract with a bank for the latter to become the treasurer and paymaster for the purpose of paying money-wages to those on the payroll of the former.

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ., concur.